**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| GLENN WILLIAMS, *et al.*, | ) |
| *Plaintiffs* | ) |
| v. | ) No. 20 cv 420 |
| CITY OF CHICAGO, | ) Judge Virginia M. Kendall |
| *Defendant*. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Glenn Williams, Browgley Russell, Richard Williams, Steve Ladislas, James Burris, Katina Burris, Michelle Russell, and Sharon Burris ("Plaintiffs") bring this putative class action against Defendant the City of Chicago ("the City"). (Dkt. 178). Plaintiffs allege that the City's implementation of the Chicago Lives Healthy Wellness Program ("Wellness Program") violated their rights under the Americans with Disabilities Act ("ADA"), the Genetic Information Nondiscrimination Act ("GINA"), and the Fifth and Fourteenth Amendments. (*Id.* at ¶¶ 9, 11). Employees and spouses covered under an employee's healthcare plan could participate in the Wellness Program free of charge, but the City deducted $50 from the paychecks of employees for each month that the employee or their covered spouse did not participate. (*Id.* at ¶¶ 12-14). Plaintiffs are either employees of the City or covered spouses who incurred the $50 deduction for non-participation. (*Id.* at ¶¶ 3-4, 15-16). The City has moved to dismiss all of Plaintiffs' claims in the Second Amended Complaint ("SAC") for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. 181). For the reasons given herein, the City's Motion to Dismiss is granted in part and dismissed in part.

1

## BACKGROUND

On a motion to dismiss under Rule 12(b)(6), the Court accepts the complaint's well-pleaded factual allegations—but not its legal conclusions—with all reasonable inferences drawn in the non-moving party's favor. *Smoke Shop, LLC v. United States*, 761 F.3d 779, 785 (7th Cir. 2014). Unless otherwise noted, the following factual allegations taken from Plaintiffs' SAC are assumed true for purposes of this motion. *W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 675 (7th Cir. 2016).

The Plaintiffs, all residents of Illinois, include six employees of the City—Glenn Williams ("Williams"), Browgley Russell, Richard Williams, Steve Ladislas, James Burris, and Katina Burris—as well as two spouses of employees—Michelle Russell (spouse of Browgley Russell) and Sharon Burris (spouse of James Burris). (SAC at ¶¶ 2-4). In the two-year period preceding the filing of this action until around January 1, 2021, the City requested that employees and spouses covered under an employee's healthcare plan participate in the Wellness Program. (*Id.* at ¶¶ 9-10, 13). Employees and covered spouses could participate in the Wellness Program free of charge. (*Id.* at ¶ 12). However, the City deducted $50 per month from the paychecks of employees for each month the employee failed to participate, plus an additional $50 per month deduction for each month the employee's covered spouse failed to participate. (*Id.* at ¶¶ 13-14). The six employee-plaintiffs each incurred a $50 per month payroll deduction on one or more occasions because they did not participate in the Wellness Program. (*Id.* at ¶ 15). Two plaintiffs, Browgley Russell and James Burris, each incurred an additional $50 per month payroll deduction on one or more occasions because their covered spouse did not participate. (*Id.* at ¶¶ 15-16). Furthermore, the Wellness Program required participants to undergo a medical examination, and participating

2

covered spouses also needed to submit medical history information about themselves. (*Id.* at ¶¶ 19, 24).

On May 2, 2019, Williams filed a class charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). (*Id.* at ¶ 7). Williams subsequently filed this action on January 18, 2020 against various defendants, including the City. (Dkt. 1). Williams filed the original complaint within 90 days of receiving a "notice of right to sue" letter from the United States Department of Justice. (SAC at ¶ 8). On August 14, 2020, Williams filed a First Amended Complaint (FAC), which added the other seven plaintiffs. (Dkt. 51). After the defendants moved to dismiss the FAC, but before the Court had decided the motion, Plaintiffs moved to file the instant SAC against the City and terminate their case against all other defendants. (Dkt. 174).

In the SAC, Plaintiffs raise three claims. (SAC at ¶ 11). First, Plaintiffs argue that requiring medical information from Wellness Program participants violated Plaintiffs' rights under the ADA. (*Id.* at ¶¶ 11, 19-21). Second, Plaintiffs argue that requiring medical history information from covered spouses violated Plaintiffs' rights under GINA. (*Id.* at ¶¶ 11, 24). Third, Plaintiffs argue that the monthly payroll deductions for non-participation constituted a taking of property (earned wages) without just compensation in violation of the Fifth Amendment, or in the alternative, that the monthly payroll deductions represented a deprivation of property without due process in violation of the Fourteenth Amendment. (*Id.* at ¶¶ 27-28). The City has moved to dismiss all of Plaintiffs' claims in the SAC with prejudice. (Dkt. 181).

## **LEGAL STANDARD**

"To survive a motion to dismiss under 12(b)(6), a complaint must 'state a claim to relief that is plausible on its face.' " *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility

when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Adams*, 742 F.3d at 728 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "[I]t is not enough for a complaint to *avoid foreclosing* possible bases for relief; it must actually *suggest* that the plaintiff has a right to relief … by providing allegations that 'raise a right to relief above the speculative level.' " *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 777 (7th Cir. 2007) (citing *Twombly*, 550 U.S. at 555) (emphasis in original). The Court construes the complaint "in the light most favorable to the nonmoving party, accept[s] well-pleaded facts as true, and draw[s] all inferences in her favor." *Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1146 (7th Cir. 2010). "[L]egal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to this presumption of truth." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (citing *Iqbal*, 556 U.S. at 678).

## DISCUSSION

I.  **ADA and GINA Claims**[1]

   a.  **Timeliness of ADA and GINA Claims**

The City first argues that Williams' ADA and GINA claims are time barred and should be dismissed on that basis. (Dkt. 182 at 6). Additionally, the City argues that the other Plaintiffs'

---

[1] The City asserts in its Motion that the Wellness Program resulted from collective bargaining between the City and participating labor unions. (Dkt. 182 at 5-6). However, the City does not challenge the Court's jurisdiction over the ADA and GINA based on the terms of the collective bargaining agreements. Parties are free to negotiate arbitration provisions in contracts. *Cloutier v. GoJet Airlines, LLC,* 996 F.3d 426, 434 (7th Cir. 2021) citing *14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 257, 129 S.Ct. 1456, 173 L.Ed.2d 398 (2009) ("As in any contractual negotiation, a union may agree to the inclusion of an arbitration provision in a collective-bargaining agreement in return for other concessions from the employer. Courts generally may not interfere in this bargained-for exchange."). However, "an agreement to arbitrate statutory antidiscrimination claims" must "be 'explicitly stated' in the collective bargaining agreement." *Id.*, citing *14 Penn Plaza*, 556 U.S. at 258. As the City does not argue that such an explicit statement is in the CBAs and/or applicable here, the Court presumes jurisdiction over these statutory claims for purposes of this Motion.

ADA and GINA claims should also be dismissed as time-barred because those claims attempt to piggyback off of Williams' untimely claims. (*Id.*).

Before filing an ADA or GINA claim, a plaintiff must file a charge with the EEOC within 300 days of the date of the alleged discriminatory act and receive a "notice of right to sue" letter. 42 U.S.C. § 2000e–5(e); 42 U.S.C. § 12117(a); 42 U.S.C. 2000ff-6(a). Williams filed an EEOC charge on May 2, 2019; no other plaintiffs filed an EEOC charge. (SAC at ¶ 7; Dkt. 178-1 at 2).[2] In his EEOC charge, Williams alleged that the City started discriminating against him on January 1, 2011 through the Wellness Program and that this discrimination was ongoing. (Dkt. 178-1 at 2). Williams appealed internally from 2012 to 2017, and the City did not begin deducting $50 from his monthly paychecks for non-participation until July 2017. (*Id.* at 9). The City argues that Williams' ADA and GINA claims are time-barred because the alleged discrimination started at the latest in July 2017—when the City began deducting from Williams' paycheck—but Williams did not file his EEOC charge until May 2, 2019, over 300 days later. (Dkt. 182 at 7). In response, Plaintiffs argue that Williams accrued a new cause of action each time the City deducted $50 from his paycheck for non-participation. (Dkt. 185 at 3).

Plaintiffs contend that a "separate accrual" rule should apply in this case rather than a "continuing violation" rule. (*Id.* at 5). Under a separate accrual rule, "each discrete act starts a new clock for filing charges alleging that act." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101,

---

[2] The Court may consider Williams' EEOC charge in a 12(b)(6) motion without converting the motion into one for summary judgment, as the EEOC charge is critical to Plaintiffs' SAC. *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n. 1 (7th Cir. 2012) ("A motion under Rule 12(b)(6) can be based only on the complaint itself, documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice"); see also *Davis v. Palos Health*, 2019 WL 214916, at *5 (N.D. Ill. Jan. 16, 2019) ("the EEOC Charge is pertinent to [Plaintiff's] complaint, and even if it was not, the EEOC Charge is a public record and thus subject to judicial notice"); *Green v. City of Chicago*, 2015 WL 1186822, at *1 n. 1 (N.D. Ill., Mar. 11, 2015) ("Plaintiff's complaint did not include a copy of her EEOC charge or her right-to-sue letter. However, [Defendant] attached a copy of the charge to its motion to dismiss … and it is, therefore, properly before the Court").

102 (2002).[3] The Seventh Circuit has applied the separate accrual rule to Title VII claims, including those involving wage discrimination. See *Reese v. Ice Cream Specialties, Inc.*, 347 F.3d 1007, 1013 (7th Cir. 2003) ("[pay]checks corresponding to pay periods before the 300-day limit are time-barred, but those within it may form the basis of a claim"); see also *Kellogg v. Ball State Univ.*, 984 F.3d 525, 529 (7th Cir. 2021) ("a new cause of action for pay discrimination ar[ises] every time a plaintiff receive[s] a paycheck resulting from an earlier discriminatory compensation practice"—even one that 'occurr[ed] outside the statute of limitations period' ") (internal citations omitted). Here, Plaintiffs' ADA and GINA claims—which involve monthly paycheck deductions—are analogous to the Title VII salary discrimination claims in cases like *Reese* and *Kellogg*. See also, e.g., *Rose v. Franciscan All. Inc.*, 2018 WL 2688239, at *6 (S.D. Ind. June 4, 2018) (applying the separate accrual rule from *Morgan* to a disability discrimination claim under the ADA). Indeed, both the City and Plaintiffs concede that the timeliness of Plaintiffs' claims can be considered the same as that for Title VII claims. (Dkt. 182 at 5; Dkt. 185 at 3-4). Therefore, Williams' ADA and GINA claims relating to discriminatory acts that occurred within 300 days prior to his EEOC charge are not dismissed as time-barred.[4]

Furthermore, if a plaintiff's claims are timely, claims of other plaintiffs "aris[ing] out of the same or similar discriminatory conduct, committed in the same period" can piggyback off of

---

[3] By contrast, "a continuing violation" or "cumulative violation" rule applies "when it is not immediately apparent that the law is being violated. Accordingly, a plaintiff may delay suing 'until a series of wrongful acts blossoms into an injury on which suit can be brought.' " *Bass v. Joliet Pub. Sch. Dist. No. 86*, 746 F.3d 835, 839 (7th Cir. 2014) (quoting *Limestone Dev. Corp. v. Vill. of Lemont, Ill.*, 520 F.3d 797, 801 (7th Cir. 2008)).

[4] Plaintiffs also note that the statute of limitations is an affirmative defense. (Dkt. 185 at 6). "Dismissing a complaint as untimely at the pleading stage is an unusual step, since a complaint need not anticipate and overcome affirmative defenses, such as the statute of limitations. But dismissal is appropriate when the plaintiff pleads himself out of court by alleging facts sufficient to establish the complaint's tardiness." *Cancer Found., Inc. v. Cerberus Capital Mgmt., LP*, 559 F.3d 671, 674-75 (7th Cir. 2009) (internal citations omitted). Here, Plaintiffs' SAC alleged discriminatory acts fell within the statute of limitations period for ADA and GINA claims, so Plaintiffs' SAC did not plead those claims out of court

6

the timely plaintiff's claims. *Horton v. Jackson County Bd. of County Com'rs*, 343 F.3d 897, 899 (7th Cir. 2003). In the instant case, the other plaintiffs allege that they (as employees of the City) or their spouses (who are employees of the City) were deducted $50 from their monthly paychecks on one or more occasions for non-participation in the Wellness Program. (SAC at ¶¶ 3-4, 15-16). Although the other plaintiffs did not file their own EEOC charges, they can piggyback off of Williams' EEOC charge because their claims relate to the same discriminatory conduct in the same period—the payroll deductions for non-participation in the Wellness Program. Accordingly, the ADA and GINA claims of the other plaintiffs relating to discriminatory acts that occurred within 300 days prior to Williams' EEOC charge are also not dismissed as time-barred.

### b. Exhaustion of Administrative Remedies

The City next argues that Plaintiffs' ADA—but not GINA—claims should be dismissed for failing to exhaust administrative remedies. (Dkt. 182 at 7). Specifically, the City states that Williams failed to allege disability discrimination in his EEOC charge. (*Id.*). As a result, Williams' EEOC charge did not put the City on notice of any claims of disability discrimination under the ADA, as subsequently alleged in Plaintiffs' SAC. (*Id.*).

"[A] plaintiff is barred from raising a claim in the district court that had not been raised in his or her EEOC charge unless the claim is reasonably related to one of the EEOC charges and can be expected to develop from an investigation into the charges actually raised." *Riley v. City of Kokomo*, 909 F.3d 182, 189 (7th Cir. 2018), citing *Green v. Nat'l Steel Corp.*, 197 F.3d 894, 898 (7th Cir. 1999). In *Riley*, the court held that "a failure to accommodate claim is separate and distinct from a claim of discriminatory treatment under the ADA … they are not like or reasonably related to one another, and one cannot expect a failure to accommodate claim to develop from an investigation into a claim that an employee was terminated because of a disability. *Id.*

*Riley* is similar to this case in that the allegations in Williams' EEOC charge failed to put the City on notice of the subsequent ADA claims in Plaintiffs' SAC. In his EEOC charge, Williams selected three items in response to the "Discrimination based on (check appropriate boxes)" question: "Retaliation," "Genetic Information," and "Other." (Dkt. 178-1 at 2). Williams went on to specify in "The particulars are" section under "Other": "Chicago Lives Healthy Wellness Program." (*Id.*). Notably, Williams did not select the "Disability" checkbox in his EEOC charge. (*Id.*). Although the GINA claims in Plaintiffs' SAC reasonably relate to the "Genetic Information" checkbox that Williams selected in his EEOC charge, the ADA claims in Plaintiffs' SAC do not reasonably relate to the "Retaliation" and "Other" checkboxes that Williams selected in the same EEOC charge. *See, e.g., Butler v. Chicago Transit Auth.*, 2014 WL 3939654, at *7 (N.D. Ill. Aug. 12, 2014) (granting the defendant's motion to dismiss because the plaintiff's age discrimination claim was not reasonably related to her EEOC charge, which only selected the checkboxes related to discrimination under Title VII, the ADA, and GINA, not the specific checkbox for age discrimination); *Metty v. Motorola, Inc.*, 2006 WL 2916822, at *5 (N.D. Ill. Oct. 10, 2006) (finding that the plaintiff's selection of the "Sex," "Age," and "Other" discrimination checkboxes in her EEOC charge were not reasonably related to her Title VII retaliation claim, explaining "when given the chance to expand on the 'other' category listed on her complaint form by specificying [sic] relevant details in an attachment, she nowhere mentioned either the protected actions that she took to warrant the Defendant's alleged retaliation, nor a causal connection with the adverse employment actions.") Similarly here, Williams did not add any specific details under the "Other" category to render his EEOC charge reasonably related to Plaintiffs' subsequent claim of disability discrimination. Thus, Williams—and the other plaintiffs seeking to piggyback off of Williams' EEOC charge—failed to exhaust administrative remedies for the ADA claims, and the City was

not put on notice of such claims. Plaintiffs' ADA claims are dismissed as not reasonably related to Williams' EEOC charge.[5]

### c. Genetic Information under GINA

The City argues that Plaintiffs' GINA claims should be dismissed as to Plaintiffs Glenn Williams, Richad Williams, Steve Ladislas, and Katina Burris because the City did not obtain genetic information from those Plaintiffs. (Dkt. 182 at 16). GINA provides that it is unlawful for employers "to request, require, or purchase genetic information with respect to an employee or a family member of the employee." 42 U.S.C. § 2000ff-1(b). Under GINA, "genetic information" includes information about an "individual's genetic tests," "genetic tests of family members," and "the manifestation of a disease or disorder in family members." 42 U.S.C. at § 2000ff(4). In turn, "genetic test" means "an analysis of human DNA, RNA, chromosomes, proteins, or metabolites, that detects genotypes, mutations, or chromosomal changes." *Id.* However, "genetic information" does not include "information about the sex or age of any individual" and "genetic test" does not include "an analysis of proteins or metabolites that does not detect genotypes, mutations, or chromosomal changes." *Id.* The City contends that it did not obtain any genetic information from the plaintiffs who do not have covered spouses—Glenn Williams, Richard Williams, Steve Ladislas, and Katina Burris. (*Id.* at 16-17).

In this case, the City's Wellness Program used biometric screenings to measure height, weight, waist circumference, and blood pressure, and it used blood tests to measure cholesterol, glucose, and triglyceride levels. (Dkt. 182 at 17) (citing Plaintiffs' FAC, Dkt. 51 at ¶¶ 66-68, 100,

---

[5] The City also argues that Plaintiffs' ADA claims should be dismissed because Williams failed to file a civil suit specifically alleging disability discrimination within 90 days of receiving a "right to sue" letter. (Dkt. 182 at 8-9). As the Court finds that Williams' EEOC charge was not reasonably related to his ADA allegations, the Court does not reach this argument.

125).[6] Additionally, the City's medical questionnaires asked questions about the individual's own medical information, not information about their family members. *Id.* The facts do not indicate that the City's biometric screenings and medical questionnaires detected genotypes, mutations, or chromosomal changes, per the definition of "genetic test" under GINA. 42 U.S.C. § 2000ff(4). Hence, the personal health information that the employee-plaintiffs submitted about themselves, via the biometric screenings and medical questionnaires, do not qualify as genetic information. By contrast, the two employee-plaintiffs with covered spouses do allege that they provided genetic information when they were asked to submit questionnaires about their spouses' medical history. (SAC ¶ 24). Taking these allegations as true and making all reasonable inferences in favor of Plaintiffs, these allegations are sufficient to find that these Plaintiffs provided genetic information under GINA.

Therefore, the GINA claims of plaintiffs Glenn Williams, Richard Williams, Steve Ladislas, and Katina Burris are dismissed on the basis that they did not provide genetic information to the City.[7] However, the Court does not dismiss the GINA claims of plaintiffs Browgley Russell and James Burris, who allege they provided genetic information via questionnaires concerning their spouses' medical history.

The City separately argues that the ADA and GINA claims of the two spouse-plaintiffs—Michelle Russell and Sharon Burris—should be dismissed because spouses cannot bring claims

---

[6] The Court may consider the facts concerning the City's biometric screenings and medical questionnaires from Plaintiff's FAC in a 12(b)(6) motion without converting the motion into one for summary judgment. *Geinosky*, 675 F.3d at 745 n. 1.

[7] Additionally, Plaintiffs did not respond to the City's argument that only Browgley Russell and James Burris provided any genetic information. (Dkt. 185). Thus, Plaintiffs waived any counterarguments they may have to this point, and the GINA claims of Plaintiffs Glenn Williams, Richard Williams, Steve Ladislas, and Katina Burris would be dismissed on that basis alone. *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) (holding that a party's failure to respond to an argument in a motion to dismiss results in waiver of that argument).

under the ADA and GINA; only employees can. (Dkt. 182 at 9). Michelle Russell and Sharon Burris are not employees of the City. While the collection of their genetic information, as spouses of employees, can provide a cause of action for their spouses, GINA does not provide a remedy for individuals that are not employees of the employer. *See generally* 42 U.S.C.A. § 2000ff-6. The GINA claims of Michelle Russell and Sharon Burris are dismissed.

### d. Voluntariness of Wellness Program

Finally, the City argues that Plaintiffs' surviving GINA claims should be dismissed because the Wellness Program is voluntary, and therefore lawful. (Dkt. 182 at 9-10). Under the ADA, an employer may not "make inquiries of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability, unless such examination or inquiry is shown to be job-related and consistent with business necessity." 42 U.S.C. § 12112(d). However, an employer "may conduct voluntary medical examinations, including voluntary medical histories, which are part of an employee health program available to employees at that work site." *Id.* Similarly, under GINA, an employer may obtain genetic information from an employee or family member of the employee if "the employee provides prior, knowing, voluntary, and written authorization." 42 U.S.C. § 2000ff-1(b).

Plaintiffs allege that the Wellness Program is involuntary because the City made a $50 payroll deduction for each month that an employee or covered spouse did not participate. (SAC at ¶¶ 10, 20-21). By contrast, the City argues that the Wellness Program is voluntary, as the inclusion of a "financial incentive" does not render the program involuntary. (Dkt. 182 at 11). The City notes that EEOC regulations in 2016 permitted wellness programs to include incentives of up to 30% coverage, but the EEOC withdrew these regulations in 2017. (*Id.* at 14-15). The issue of whether

11

the Wellness Program is voluntary is a question of fact. In a motion to dismiss under 12(b)(6), the Court "accept[s] well-pleaded facts as true." *Reynolds*, 623 F.3d at 1146. Plaintiffs have alleged that their participation in the Wellness Program was not voluntary (SAC at ¶¶ 10, 20-21). Taking these allegations as true and making all reasonable inferences in favor of Plaintiffs, as the Court must at this stage, Plaintiffs have sufficiently alleged that the Program was not voluntary. The factual question of whether the Wellness Program is voluntary is not ripe to decide in a 12(b)(6) motion.

### e. Availability of Damages for GINA Claims

The City argues that damages for Plaintiffs' GINA claims should be stricken because "GINA authorizes only damages actions that allege intentional discrimination based on genetic information," and Plaintiffs failed to allege that the City engaged in intentional discrimination. (Dkt. 182 at 19). Plaintiffs do not allege intentional discrimination, nor do they address this in their Opposition, and so their prayer for damages is stricken.

## II. Constitutional Claims

The City argues that Plaintiffs' constitutional claims should be dismissed because Plaintiffs failed to allege they had a property interest in the thing taken. (Dkt. 182 at 21). The Takings Clause of the Fifth Amendment, which applies to the states through the Fourteenth Amendment, provides that "nor shall private property be taken for public use, without just compensation." *Sorrentino v. Godinez*, 777 F.3d 410, 413 (7th Cir. 2015) (quoting U.S. Const. amend. V). Additionally, the Due Process Clause of the Fourteenth Amendment provides that "nor shall any State deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. A plaintiff needs to have a protected property interest in order to make a Takings Clause claim under the Fifth Amendment. *Ruckelshaus v. Monsanto Co.,* 467 U.S. 986, 1000-01 (1984). Similarly, "in any

[Fourteenth Amendment] due process case where the deprivation of property is alleged, the threshold question is whether a protected property interest actually exists." *Cole v. Milwaukee Area Tech. Coll. Dist.*, 634 F.3d 901, 904 (7th Cir. 2011).

"To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972). "Property interests … are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Id.* In particular, "property interests in the employment context arise in two ways: by an 'independent source such as state law securing certain benefits,' or by a 'clearly implied promise of continued employment.' " *Heck v. City of Freeport*, 985 F.2d 305, 310 (7th Cir. 1993) (internal citations omitted).

Courts have, for example, found that a county's historical practice of providing free health insurance to retirees did not amount to a protected property right because no state law or municipal ordinance expressly provided for the free health insurance. *Hussey v. Milwaukee Cnty.,* 740 F.3d 1139, 1145-46 (7th Cir. 2014). Furthermore, if a state law or municipal ordinance once provided for a benefit but the law or ordinance is later repealed, the associated benefit ceases to be a protected property interest. *Bell v. City of Country Club Hills*, 841 F.3d 713, 720 (7th Cir. 2016) (finding that a tax rebate for homeowners was no longer a protected property interest after the repeal of the municipal ordinance providing for the tax rebate).

Here, the City argues that Plaintiffs do not have a protected property interest in receiving health insurance and medical benefits without participating in the Wellness Program, as this arrangement was negotiated between Plaintiffs' union and the City and formalized in a collective

bargaining agreement. (Dkt. 182 at 22-23).[8] Plaintiffs contend that their protected property interest comes from their right to receive their full earned wages, not from receiving healthcare benefits without the Wellness Program. (Dkt. 185 at 13-14). However, the deductions are more appropriately classified as an additional premium for health insurance than as a denial of earned wages, as Williams' EEOC charge acknowledges that the $50 per month payroll deductions were "openly considered additional premium for the the [sic] Health Care Program." (Dkt. 178-1 at 10). Plaintiffs have not alleged that any state law, municipal ordinance, or contractual promise (express or implied) provides for a protected property interest in health insurance without the additional $50 premium. Accordingly, Plaintiffs have failed to sufficiently allege that they have a threshold property interest necessary to support a Takings Clause claim under the Fifth Amendment and a Due Process claim under the Fourteenth Amendment. Plaintiffs' Fifth Amendment and Fourteenth Amendment claims are dismissed.[9]

## CONCLUSION

For the foregoing reasons, the City's Motion to Dismiss is granted in part and denied in part. Plaintiffs' ADA and constitutional claims are dismissed. Additionally, the GINA claims of plaintiffs Glenn Williams, Richard Williams, Steve Ladislas, Katina Burris, Michelle Russell, and Sharon Burris are dismissed. The GINA claims of Plaintiffs Browgley Russell and James Burris survive.

---

[8] The Court may consider the facts concerning the collective bargaining agreement from Williams' EEOC charge in a 12(b)(6) motion without converting the motion into one for summary judgment. *Geinosky*, 675 F.3d at 745 n. 1.
[9] The City offers alternative grounds for dismissing Plaintiffs' Fifth and Fourteenth Amendment claims, including that these claims are time-barred. (Dkt. 182 at 20-21). Assuming without deciding that Plaintiffs' constitutional claims are not time-barred, the Court nonetheless dismisses these constitutional claims for failing to allege the required property interest.

_____
Virginia M. Kendall
United States District Judge

Date: July 25, 2022