**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

JAMES BURRIS, *et al.*,

      Plaintiffs,

v.

CITY OF CHICAGO,

      Defendant.

Case No. 20 C 420

Hon. LaShonda A. Hunt

**<u>MEMORANDUM OPINION AND ORDER</u>**

Plaintiffs James Burris and Browgley Russell (together, "Plaintiffs") sued Defendant City of Chicago ("City") for violations of the Genetic Information Nondiscrimination Act of 2008 ("GINA").[1] Plaintiffs allege that the City violated GINA by requiring them and their spouses to provide "genetic information" without first obtaining their consent, when they enrolled in the Chicago Lives Healthy Wellness Program ("Wellness Program"). (*See* 2d Am. Compl. ¶¶ 21-25, Dkt. 178). The City has moved for summary judgment, maintaining that it never received their genetic information, and even if it did, their voluntary disclosure constituted appropriate consent. (Mot. at 4319, Dkt. 278).[2] Plaintiffs failed to file a timely response in opposition. For the reasons discussed below, the motion for summary judgment is granted.

---

[1] The claims of all other named plaintiffs in this matter have been dismissed. *See generally, Williams v. City of Chi.*, 616 F. Supp. 3d 808 (N.D. Ill. 2022).

[2] Unless otherwise noted, page numbers in citations to the docket reference the "PageID #" in the CM/ECF header of the document, not other page numbers in the header or footer.

**BACKGROUND**

The City and participating labor unions created the Wellness Program in 2011. (SOF ¶ 17, Dkt. 280).[3] The program intended to reduce out-of-pocket medical expenses by helping participants improve their health. (*Id.* ¶ 19). Participation was 100% free of cost to covered employees and their spouses; but a $50 increase per person in their monthly healthcare coverage contribution was imposed upon nonparticipants. (*Id.* ¶¶ 18-20).

At certain times, participants in the Wellness Program were required to undergo biometric screening and submit a well-being assessment questionnaire. (*Id.* ¶ 31). The biometric screening included a physician screen, where the participant's physician documented height, weight, waist circumference, blood pressure, total cholesterol, low- and high-density lipoprotein, fasting glucose, and triglycerides. (*Id.* ¶ 41). The questionnaire elicited similar information and asked about the participant's medical history, including smoking and drinking habits, diagnoses with certain conditions, mental health, and whether they were taking certain medications. (*Id.* ¶¶ 43-44). Participants were not required to answer every question, and no penalty was imposed for refraining from disclosing their medical history. (*Id.* ¶ 45). The City never received results of an individual's biometric screening or questionnaire. (*Id.* ¶ 46).

Plaintiffs are employed by the City, and they and their spouses receive healthcare coverage through the City. (*Id.* ¶¶ 1, 50-51, 58-59). Plaintiffs, however, made different choices concerning the Wellness Program.

---

[3] Plaintiffs did not comply with Local Rule 56.1(e) and file a response to the City's statement of material facts. Thus, to the extent a statement is supported by evidence in the record, it is deemed admitted. *See Keeton v. Morningstar, Inc.*, 667 F.3d 877, 884 (7th Cir. 2012).

Burris and his wife (together, the "Burrises"), chose not to enroll in the Wellness Program. (*Id.* ¶ 52). Indeed, during the period relevant to this case, the Burrises were charged the $50 incentive fee for their lack of participation in the Wellness Program. (*Id.* ¶ 56). Russell and his wife (together, the "Russells"), on the other hand, chose to participate in the Wellness Program in 2019. (*See id.* ¶¶ 61-62). The Russells completed their biometric screenings and questionnaires in early 2019. (*Id.* ¶¶ 61-62).

In January 2020, another City employee and former plaintiff, Glenn Williams, filed this action. (Compl., Dkt. 1). Williams amended the complaint in August 2020, adding seven other plaintiffs, including the Burrises and the Russells. (Am. Compl., Dkt. 51). Finally, in March 2022, a second amended complaint was filed against the City. (2d Am. Compl., Dkt. 178). The operative complaint alleged that the City's implementation of the Wellness Program violated the plaintiffs' rights under the Americans with Disabilities Act, GINA, and the Fifth and Fourteenth Amendments. (*Id.* at ¶ 9). After the City moved to dismiss that complaint, the Court granted the motion as to all but the GINA claims of Plaintiffs on July 25, 2022 (Dkt. 192).[4] Following fact and expert discovery, the City now seeks entry of summary judgment on those remaining claims. That request is unopposed.

## STANDARD OF REVIEW

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether there is a genuine issue of fact, the Court "must construe the facts and draw all reasonable inferences in the light most favorable to the nonmoving party." *Foley v.*

---

[4] This case was reassigned to Judge Hunt on June 2, 2023 (Dkt. 220).

*City of Lafayette Indiana*, 359 F.3d 925, 928 (7th Cir. 2004). The party seeking summary judgment

has the burden of establishing the lack of any genuine issue of material fact. *See Cellotex Corp. v.*

*Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L. Ed. 2d 265 (1986). A genuine issue of material

fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving

party." *Anderson v. Liberty Lobby Inc*., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L. Ed. 2d 202

(1986). Summary judgment is proper against "a party who fails to make a showing sufficient to

establish the existence of an element essential to that party's case, and on which the party will bear

the burden of proof at trial." *Cellotex,* 477 U.S. at 322. "The mere existence of a scintilla of

evidence in support of the (non-movant's) position will be insufficient; there must be evidence on

which the jury could reasonably find for the (non-movant)." *Anderson,* 477 U.S. at 252.

As previously noted, Plaintiffs did not properly refute the City's summary judgment

submissions. "However, a nonmovant's failure to respond to a summary judgment motion, or

failure to comply with Local Rule 56.1, does not, of course, automatically result in judgment for

the movant." *Id.* "[The City] must still demonstrate that it is entitled to judgment as a matter of

law." *Id.* Although Plaintiffs have not provided their own version of the facts, the Court still views

all of the facts asserted by the City in the light most favorable to Plaintiffs, the nonmoving party,

and draws all reasonable inferences in Plaintiffs' favor. *Adams v. Wal-Mart Stores, Inc*., 324 F.3d

935, 937 (7th Cir. 2003); *Curran v. Kwon*, 153 F.3d 481, 485-486 (7th Cir. 1998).

## **DISCUSSION**

Only Plaintiffs' GINA claims remain. Burris and Russell each argue that the City has

violated GINA by acquiring their genetic information without "prior, knowing, voluntary, and

written authorization." (2d Am. Compl. ¶¶ 19-25) (quoting 42 U.S.C. § 2000ff-1(b)(2)(B)). GINA

provides that it is unlawful for employers "to request, require, or purchase genetic information

with respect to an employee or a family member of the employee." 42 U.S.C. § 2000ff-1(b).

4

In its motion for summary judgment, the City argues that the GINA claims fail because: (1) neither Plaintiff has established that the City ever acquired their (or their spouses') genetic information; and (2) even if the City acquired genetic information via the Wellness Program, the acquisition would be voluntary and therefore not in violation of GINA. (Mem. Supp. Mot. at 4335-4342, Dkt. 279). Plaintiffs failed to respond to the City's motion despite the Court granting them two extensions. (*See* Min. Entries, Dkts. 284, 287).[5] The Court finds the threshold issue of whether the City acquired genetic information of Plaintiffs to be dispositive. Therefore, only that issue is addressed below.

## I.    Burris's GINA Claim

Burris asserts that the City obtained genetic information when his spouse completed a questionnaire during their enrollment in the City's Wellness Program. (2d Am. Compl. ¶¶ 19-25). However, the City contends he has not established that fact through discovery. (Mem. Supp. Mot. at 4335-4336).

When a plaintiff's allegations are unsupported by evidence, they are "seen to be no more than irrelevant and unsupported supposition and argument." *Murphy v. ITT Educ. Servs.*, 176 F.3d 934, 938 (7th Cir. 1999). Notwithstanding his allegations in the complaint, (2d Am. Compl. ¶¶ 21-25), Burris stated in his answers to the City's interrogatories that his "wife was not allowed to participate in the [Wellness Program] since I chose not to participate," and that neither of them provided any "genetic information," as defined by GINA because he "felt it was too intrusive and illegal . . . ." (SOF ¶ 52; *see also* Burris Interrog. Resp. at 4931-4932, Dkt. 280-8). Burris further verified this statement during his deposition when he admitted that "[a]s far as [he] know[s]," the

---

[5] The Court also noted in the first minute entry that "[t]his is a final extension," (Min. Entry, Dkt. 284), and in the second minute entry that "**NO FURTHER EXTENSIONS WILL BE GRANTED**." (Min. Entry, Dkt. 287) (emphasis in original).

City has never requested genetic information from him or his spouse. (Burris Dep. at 4399, Dkt. 280-2). The record also reflects that Burris incurred charges only for his *lack of participation* in the Wellness Program during the relevant period. (SOF ¶ 56).

In sum, the undisputed record, including Burris's own testimony, establishes that his allegations related to his GINA claim are simply not true. The Court previously barred any testimony from his wife after she repeatedly failed to appear for her deposition. (Dkt. 271). Because the record is devoid of any facts to prove Burris's claim, summary judgment is granted in favor of the City on his GINA claim.

## II.      Russell's GINA Claim

Russell also asserts that his spouse provided genetic information to the City via a questionnaire during their enrollment in the Wellness Program. (2d Am. Compl. ¶¶ 19-25). The City acknowledges their enrollment but argues that Mrs. Russell did not provide "genetic information" as defined by GINA. (Mem. Supp. Mot. at 4336-4338). The Court agrees.

Under GINA, "genetic information" includes information about an "individual's genetic tests," "genetic tests of family members," and "the manifestation of a disease or disorder in family members." 42 U.S.C. § 2000ff(4). In turn, "genetic test" means "an analysis of human DNA, RNA, chromosomes, proteins, or metabolites, that detects genotypes, mutations, or chromosomal changes." *Id.* However, "genetic information" does not include "information about the sex or age of any individual" and "genetic test" does not include "an analysis of proteins or metabolites that does not detect genotypes, mutations, or chromosomal changes." *Id.*

This Court previously dismissed the GINA claims of all plaintiffs (other than Mr. Burris and Mr. Russell) because it found that they pled disclosure of personal health information, like "height, weight, waist circumference, . . . blood pressure, . . . cholesterol, glucose, and triglyceride

6

levels," which "do[es] not qualify as genetic information" under GINA. *Williams*, 616 F. Supp. 3d at 816. *See also Ortiz v. City of San Antonio Fire Dep't*, 806 F.3d 822, 826 (5th Cir. 2015) ("[A]n employer does not violate GINA through 'the use, acquisition, or disclosure of medical information that is not genetic information about a manifested disease, disorder, or pathological condition of an employee or member, including a manifested disease, disorder, or pathological condition that has or may have a genetic basis.'") (quoting 42 U.S.C. § 2000ff-9). The Court permitted discovery on Plaintiffs' GINA claims because they pled that their spouses provided genetic information when enrolling in the Wellness Program. *Williams*, 616 F. Supp. 3d at 816 (denying the City's motion to dismiss claims of "the two employee-plaintiffs with covered spouses" who "allege that they provided genetic information when they were asked to submit questionnaires about their spouses' medical history"). But, like his counterpart, Russell's claims did not bear fruit in discovery.

Russell's contention that his spouse provided genetic information to the City is unsupported by the undisputed record. She completed the Wellness Program's questionnaire in early 2019. (SOF ¶ 61). But the record reflects that Russell did not produce her questionnaire, and the City has never been in possession of, or had access to, the questionnaire. (SOF ¶¶ 67-68). When asked at his deposition if he had "any knowledge as to what, if any, questions on the [questionnaire] [his] spouse answered," Mr. Russell responded "no, I do not." (Russell Dep. at 4372, Dkt. 280-1; *see also* SOF ¶ 63). Then when the City's counsel asked Mrs. Russell if the City had ever asked for "genetic information" from her, she testified that she does not know, (Mrs. Russell Dep. at 4422, Dkt. 280-3), and that she does not recall ever providing genetic information to the City. (*Id.* at 4423).

As such, Russell's GINA claim is unsupported by the record. The Court finds that there is no evidence on which a jury could reasonably find for Russell because he has failed to establish a triable issue of fact on the dispositive question of whether he or his spouse provided genetic information to the City. Conclusory allegations are simply not enough to avoid summary judgment. *See Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (finding that nonmoving party may not rely on conclusory allegations, unsupported by the record, in order to defeat summary judgment). Thus, the City is also entitled to summary judgment on Russell's GINA claims.

## CONCLUSION

For all the foregoing reasons, the City's motion for summary judgment [278] is granted.


**DATE**: July 7, 2025                    **ENTERED**:

*LaShonda A Hunt*
                                          LaShonda A. Hunt
                                          United States District Judge